THE LEHIGH COAL AND NAVIGATION COMPANY

*v.*

THE CENTRAL RAILROAD COMPANY OF NEW JERSEY.

The petitioners claimed to have supplied the former receiver of an insolvent railroad, appointed by this court, with large quantities of materials for the use of the railroad. They applied for an order directing the present receiver of the railroad to pay for those materials, and also for an order giving them leave to sue him at law for the damages which they allege they have sustained at his hands by reason of his non-fulfillment of his predecessor's contracts with the petitioners for other materials, similarly supplied.—*Held* (1), that this court, before granting the petition, would, by a preliminary examination of the transaction, determine whether the matter cannot be disposed of here ; (2) that the present receiver is not, as such, liable to be sued at law on the contracts of his predecessor ; and whether the railroad property is bound by the contracts of the former receiver, is a question of which this court has exclusive jurisdiction.

---

On petition by Edward W. Vanderbilt and Edward M. Hopkins, and answer by Henry S. Little, receiver, and replication by petitioners.

*Mr. A. Q. Keasbey* and *Mr. Barker Gummere,* for petitioners.

*Mr. B. Williamson,* for receiver.

VAN FLEET, V. C.

The petitioners, Edward W. Vanderbilt and Edward M. Hopkins, are before the court asking a remedy against the receiver of the Central Railroad Company of New Jersey for certain grievances which they allege they have suffered at his hands. They allege, in the first place, that they have sold and delivered to the receiver certain railroad supplies, which he has accepted, but which he refuses to pay for; and they allege, in the second place, that they have sustained heavy damages in consequence of the receiver's refusal to abide by the contracts of his predecessor.

Francis S. Lathrop was the first receiver of this corporation, having been appointed March 14th, 1877. He died March 3d, 1882. The present receiver was appointed the next day, March 4th, 1882. The petitioners say that they commenced, as a firm, to deal with the first receiver in March, 1881, and that during the period covered by their transactions with him they were in the habit of making their principal contracts with him in the months of December and January, and that the contracts made during those months usually embraced such supplies as would be needed during the ensuing year, being based on estimates made by the officers of the road of the quantity of supplies that would be required for that period. And that after making their contracts with the receiver, it was necessary for them, in order to be able to perform their contracts, to enter into contracts with other persons to provide themselves with the supplies they had agreed to furnish. They further say that at the time of the death of the first receiver, several unexecuted contracts existed between him and them, by which they were bound to deliver, and he to accept, large quantities of supplies; that the present receiver, after coming into office, permitted them to continue to perform their contracts with his predecessor, and to accept the supplies they delivered under them until June 15th, 1882, when, without cause, he refused to receive further supplies, and notified them that he did not consider himself bound by the contracts of his predecessor. The petitioners further say that after making the contracts with the first receiver, which were unperformed

when he died, they, on the faith of them, and to put themselves in condition to perform them promptly and satisfactorily, entered into numerous contracts with other persons, which they have since been compelled to perform, or to rescind by paying damages, or to break and thus render themselves liable for damages, and that the losses they have thus already suffered and which they will ultimately be compelled to bear, in consequence of the action of the present receiver, aggregate a very large sum of money. They further say that their contracts with the first receiver were made by the authority of this court, the chancellor having, by an order made on the 24th day of March, 1877, directed the receiver to keep the railroad and other property of the corporation in good condition and repair, and to that end empowered him to contract for, purchase and pay for such materials and supplies as should seem to him, in the exercise of a wise discretion, to be necessary and proper. The petitioners, on the case thus made, ask for two kinds of relief: first, for an order peremptorily directing the receiver to pay for the supplies which he has accepted but not paid for; and second, for an order giving them leave to sue the present receiver at law for the damages which they allege they have sustained at his hands.

To the petitioners' case the receiver interposes several defences. First, he says he was not bound by the contracts of his predecessor, and was not liable on them, either as an original contracting party nor as the representative of the deceased contracting party, and was therefore under no obligation to perform them; second, he says the contracts, on the breach of which the petitioners ground their claim for damages, were improvident, embracing material neither necessary nor useful to the road, and that if he had accepted and paid for the material he would have been guilty of squandering the funds of the trust; third, he says that in November and December, 1882, and in January, 1883, he made several contracts with the petitioners for the purchase of material, in which they agreed that if he would buy the material he then needed of them, they would make no claim for the damages which they alleged they had sustained in consequence of his refusal to perform the contracts of his predecessor; and

12

fourth, he says that subsequent to January, 1883, he paid the petitioners $42,000, on a distinct understanding that they accepted that sum in full satisfaction and discharge of all their claims, both of debt and damages, except a claim of $13,070.75 ; that this last sum represents the amount which the petitioners claimed to be due to them from him for supplies accepted, but against which he claims the right to set off certain over-payments made by his predecessor to the petitioners. That with regard to these counter-claims he says it was agreed between the petitioners and himself that they should be put in due course of final adjustment by appropriate judicial proceedings, and that they constituted the only matters unadjusted and unsettled between them. The petitioners have filed a special replication, denying the truth of each matter of fact set up by way of defence.

In this state of the record, the petitioners insist that they are entitled, as of course, without any examination by this court into the facts of the case, to an order giving them leave to sue the receiver at law, on both claims, for the reason that this court is incompetent to try the question at issue. Their authority for this insistment is *Palys* v. *Jewett, 5 Stew. Eq. 302.* That case does decide that, for injuries caused by the negligence of a receiver appointed by this court to operate a railroad, this court is incompetent to give a remedy. But the petitioners are not here asking a remedy for a tort, or for a cause of action resting in damages only. Their claims are grounded on contract. With regard to the contracts which they say they made with the present receiver, and under which supplies have been delivered and accepted, it is clear, leave to sue should not be given without some examination into the grounds of action by this court, nor until this court is first satisfied that the proper determination of the petitioners' rights involves legal questions which this court is not competent to try. If the case is a plain one, and the liability of the receiver clear; if the fact is that the petitioners have delivered supplies to the receiver, on his contract, of the quality and quantity required by the contract, and simply ask to be paid for them at the prices agreed upon—and there is no just reason why they should not be paid—a suit at law is not

only wholly unnecessary, but the court, in giving leave to sue, in such a case, would be authorizing an inexcusable waste of the moneys of the trust. The proper course to be pursued, when a dispute arises between a receiver and the other contracting party, respecting a contract made by the receiver, would, in my opinion, be this—the court should proceed to investigate the matter in a summary way; and if it appears that the case is free from difficulty, or that the dispute involves no question which must necessarily be settled at law, the court should proceed to decide the matter. That this court is competent to conduct such investigations and decide such controversies, seems to me to be entirely clear on principle.

It is certain that a receiver is not amenable to the process or order of any other court than that appointing him, nor suable anywhere except by the permission of the court appointing him. The reason this restraint is imposed on the right to sue, is that the property in the possession of the receiver is, in fact and in law, in the possession of the court, and subject alone, at least in the first instance, to its order and control. The duty and responsibility of doing justice, by judgment, in respect to the disposition of the property, rests wholly upon the court having possession. No other tribunal has a particle of power, as a matter of original jurisdiction, to dispose of the most trifling part of the property. It is obviously impossible, therefore, for the court having possession of the property to perform its duty in respect to the property, unless it takes to itself jurisdiction of all questions concerning its disposition, or so far controls the proceedings by which such questions are determined, as to make the result reached the judgment, in effect, of that court. Our statute directs that when a railroad corporation has become insolvent, and the chancellor has taken possession of its property, by the appointment of a receiver, the receiver shall operate the road for the use of the public, subject, at all times, to the orders of the chancellor, and the operating expenses are made a first lien on its earnings. *Rev. p. 196 § 106.* As I read this statute, it puts the franchises and property of the corporation in the possession of the chancellor for two purposes—first, to have the road oper-

ated for the use of the public, and second, to have its franchises and property disposed of and administered for the benefit of its creditors and stockholders. The agency empowered and directed to perform these duties, it is important to remember, is purely judicial in its character; and it is also important to observe that it is an established principle in legal science, that whenever a duty is imposed on a judicial tribunal, there is always, in the mere imposition of the duty, whether there be an express grant of power or not, a grant of sufficient power to enable it to perform the duty. It is so clear as to seem to me not to be a matter open for discussion, that the chancellor must, under this statute, decide what are and what are not necessary and proper operating expenses. The first question in dispute between the petitioners and the receiver is, therefore, one which, it is manifest, this court should, in the first instance, investigate, to see whether its proper determination involves the trial of an issue which this court is not competent to try. Until that question is decided, the petitioners, in my judgment, are not in position to ask for liberty to sue at law.

Nor is it possible for me to see how such leave can, on the admitted facts of the case, be of the least advantage to the petitioners, in respect to the contracts they claim to have made with the first receiver. They ask leave to sue the present receiver for refusing to perform contracts made by his predecessor. In what way, or by what means did the present receiver become legally bound to perform contracts made by somebody else? I have always supposed the law on this subject to be so firmly settled as to be beyond all question, and that it had become an axiom, that all the parties to a contract, or their legal representatives, were bound by it, or liable at law for breaking it. It is certain the present receiver is no party to these contracts. He neither negotiated them nor assented to them. He has not been directed by the chancellor to perform them. It is not possible, therefore, for me to see how he was under the least legal duty to perform them, nor under what legal rule he can be held liable, at law, for not performing them. He cannot be said to have broken them, because he was under no obligation to perform them. He

had promised nothing, and could not therefore be required to perform anything. He is not the representative of his predecessor. In his character as receiver, his predecessor can have no representative, in the legal sense of that term. He was, at best, a mere agent or instrument, and when he died, his power died also, and he left nothing behind him, as receiver, of either property or power, in which he can be represented so as to make his acts binding on his successor. It may be that the contracts of the first receiver bound the trust. That, probably, would be their effect if they were not improvident, but, on the contrary, were made in conformity to the chancellor's orders. But the question whether they bind the trust or not, is one of which this court has exclusive jurisdiction, and it cannot, in the first instance, be heard elsewhere.

The petitioners' application on the case, as it now stands, must be denied.